UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                                        CRIMINAL ACTION NO. 3:08-CR-24-H

ANTWONE MAURICE SHAW
AMBER LANAY BROWN                                         DEFENDANTS

### REPORT AND RECOMMENDATION

This matter is before the Court on the motion of the Defendants, Antwone

Maurice Shaw and Amber Lanay Brown, to suppress from evidence all items seized as the result

of the execution of a search warrant at the apartment of Defendant Brown on March 8, 2007 (DN

50).  Defendants allege in their motion[1] that the information set forth in the affidavit of

Louisville Metropolitan Police Department (OMPD) Officer William Bower is insufficient on its

face to establish probable cause to believe that illegal drugs or other contraband would be found

in Brown's apartment at the time of the search.

More specifically, Defendants maintain that the bulk of the information found in

the affidavit allegedly comes from an unnamed confidential informant (CI), whose veracity and

reliability are not established; nor is the information provided by the CI adequately corroborated.

 The United States has filed a response to the motion in which it argues that the affidavit sets

forth sufficient facts, supported by independent investigation, on which the issuing court could

find a substantial basis to believe that illegal narcotics would be found in the apartment at the

time of the execution of the warrant (DN 55).

---

[1]  The motion is filed by Defendant Shaw.  Defendant Brown has joined in the motion.

## THE MATERIAL FACTS

On March 8, 2007, LMPD Officer William M. Bower submitted an affidavit for a search warrant to the Jefferson District Court (DN 50, Exh. 1).  Officer Bower asserted in the affidavit that he had reasonable and probable grounds to believe that the apartment of Defendant Brown presently contained crack cocaine and other illegal controlled substances.  As the basis for this belief, Officer Bower, a police officer with seven years experience, related in the affidavit the following facts:

> On the eighth day of March, 2007, at approximately 1200 p.m., affiant received information from/observed:
>
> a reliable confidential informant pursuant to Kentucky Rules of Evidence 508 who is knowledgeable in the ways in which drugs are packaged, sold and has proven his/her reliability in the past. The CI stated that he/she knows a B/M named Punkin who is selling crack cocaine from [apartment address].  The CI states that Punkin has been arrested in the past for selling cocaine.  The CI states that Punkin is living in this apartment with his girlfriend Amber.  The CI was present in the past 48 hours when drugs were sold at this location.
>
> Acting on the information received, affiant conducted the following independent investigation:
>
> - Detective verified Punkin, through a photo, to be Antwone Shaw who Detective was familiar with due to prior dealings and intelligence gathered.
>
> - Detective met with the assistant manager of the Pinehurst Apartments who verified that Amber Brown was leasing the apartment at [apartment address].  She further stated that a B/M named Antwone was living there with her.
>
> - Detective verified that Antwone Shaw is currently released on shock probation through Officer Williams of Probation and Parole.

2

> - Detective found through court records that Antwone Shaw has previously pled guilty to TICS (cocaine) 01-CR-001840 and POCS (cocaine) 02-CR-000297.

(DN 50, Ex. 1).

Based on this affidavit, the District Court for Jefferson County, Kentucky, issued the now-challenged search warrant on March 8, 2007, at approximately 5:50 p.m. (DN 50, Ex 2). The warrant authorized law enforcement officers to search Brown's apartment for illegal controlled substances along with "anything used to cut, measure, weigh, use, ingest, measure, conceal, protect, transport or transfer such substances. Any other paraphernalia, money, weapons, property or records related to or derived from the sale of such substances." (*Id.*). LMPD officers, armed with the search warrant, proceeded to the apartment of Defendant Brown where the warrant was executed that same evening.

A search of Defendant Brown's apartment revealed the presence of 107 grams of crack cocaine located in a woman's purse in the kitchen of the apartment. The purse was styled with a large "A" on the side. Officers also discovered in the course of their search a .40 caliber handgun, approximately $900 in cash, a number of plastic baggies, and various documents bearing the name of Antwone Shaw.

Defendant Brown and her child were present in the apartment at the time of the search. LMPD officers obtained a series of statements from Brown to the effect that Shaw had been living there with her since she rented the apartment, that the male clothing observed on the premises belonged to Shaw, and that the handgun discovered by the officers must have belonged to him as she was unaware of its presence in the apartment.

## CONCLUSIONS OF LAW

**1.     Arguments of the Defendants.**

Defendants Shaw and Brown now argue that the above-described search warrant is constitutionally deficient in at least four respects.  Defendants maintain that the affidavit submitted by Officer Bower failed to establish probable cause because the affidavit did not contain any basis on which a judge could conclude that (1)the confidential informant was reliable, (2) that a fair probability existed that evidence of a crime would be found on the premises, (3) that placed Defendant Shaw in the apartment while illegally distributing narcotics or (4) that corroborated in any meaningful fashion the information allegedly provided by the unnamed CI.  (DN 50, p. 3).

Defendants first insist with regard to the information obtained from the informant that the affidavit entirely fails to set forth the informant's basis of knowledge or his/her veracity. The affidavit contains no facts concerning the undisclosed track record and instead is nothing more than a bald declaration that the informant is reliable - - an opinion of Officer Bower who, in his affidavit, was simply vouching for an anonymous, untested declarant.  (*Id* at 4*).*  This subjective belief, according to Defendants, is entirely insufficient to establish the informant's veracity.  *See, United States v. Pirtle*, 2008 WL 740332 (W.D. Tenn. Jan. 2, 2008).

Defendants also protest that the affidavit is devoid of any meaningful detail with respect to how, when or where the undisclosed informant came to know that "a B/M named Punkin was selling crack-cocaine from [Brown's] apartment."  In this respect, Defendants insist that Bower's affidavit is the epitome of a "bare bones" affidavit that contains nothing more than mere conclusions of alleged drug dealing unaccompanied by any meaningfully supported facts.

4

*See, United States v. Laughton*, 409 F.3d 744 (6th Cir. 2005).  Accordingly, the affidavit simply cannot establish a reasonable basis for the issuing judge to believe that contraband would be found in the apartment at the time of its execution.

        Defendants point out as support for this conclusion that the affidavit does not specify what drugs that the undisclosed informant is familiar with in their packaging or sale.  It does not identify the nature of the alleged narcotic that supposedly was sold on the apartment premises within 48 hours prior to the issuance of the search warrant.  In fact, the briefly-worded affidavit of Officer Bower does not even contain a description of the interior of Brown's apartment, which had the CI actually been inside one would anticipate would be described if for no other reason than to confirm the informant's alleged presence therein.   Thus, the bottom line is that the issuing court was faced with an affidavit entirely based on an undisclosed informant with an unknown history as such who, without revealing the basis of his knowledge, merely concluded that he/she knew that narcotics were being sold from the apartment.

        Defendants add that the information independently obtained by Officer Bower provides little clarification or meaningful confirmation in support of the CI's conclusions.  For example, the affidavit does not explain in sufficient detail how Officer Bower verified the identity of "Punkin" to be that of Defendant Antwone Shaw; nor does the affidavit indicate that the assistant manager of the apartment complex was shown a photograph of Shaw to confirm his presence at the apartment prior to the issuance of the search warrant.  As for Shaw's prior drug offenses, Defendants point out that these offenses occurred **five years** prior to the date on which the search warrant was executed, thereby extinguishing any possible argument of current, ongoing drug activity on the part of Shaw.  Accordingly, in the absence of a meaningful

5

establishment of the CI's reliability or any substantial independent police corroboration to confirm the bald conclusions of the informant, no substantial basis was shown to conclude that probable cause existed to believe that illegal drugs would be found in the apartment of Defendant Brown on March 8, 2007.

Based on the law set forth below, and its own examination of the affidavit at issue the Court must agree with the Defendants– the bare bones affidavit of Officer Bower, even when examined in a practical, common sense fashion, with a deferential attitude, simply does not set forth a substantial basis on which the issuing court could believe that evidence of crime would be found in Brown's apartment on March 8, 2007.


**2.      The Law of Probable Cause.**

The Fourth Amendment provides that, "No warrant shall issue but upon probable cause, supported by oath or affirmation..."  U.S.Const. Amend. IV.  Probable cause is a fluid concept that is defined as being "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion" and exists "when there is a 'fair probability' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place."  *Unites States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004), *cert. denied*, 543 U.S. 1095 (2005)(citing *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir. 1991)).

In determining the existence of probable cause, a magistrate judge is to apply the "totality of the circumstances" analysis discussed in *Illinois v. Gates*, 462 U.S. 213, 238-38 (1983).  The *Gates* test requires the magistrate judge to "make a practical, common-sense decision, whether given all the circumstances set forth in the affidavit before him, including the

'veracity' and 'basis of knowledge' of persons supplying the hearsay information," probable cause exists. *Id; Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005) ("The totality of the circumstances test requires us to evaluate the probabilities of finding criminal activities based on the evidence provided in the affidavit, as opposed to requiring that the evidence in the affidavit guarantees the discovery of criminal activity."). Thus, the magistrate judge looking to all of the circumstances must have a substantial basis to find that the affidavit at issue established probable cause to believe that evidence would be found at the place cited. *United States v. Trujillo*, 376 F.3d 593, 602-04 (6th Cir. 2004).

The affidavit is to be reviewed in a common sense, rather than a hyper-technical, manner. *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). The affidavit need not be perfect, nor must it use magic words or present proof sufficient to withstand rigorous cross-examination. *Hale*, 396 F.3d at 725. The reviewing court is required to pay great deference to the decision of the issuing state court judge and must not give a grudging or hyper-technical review. *Trujillo*, 376 F.3d at 602-04. Line-by-line scrutiny of the affidavit is not appropriate. *United States v. Johnson,* 351 F.3d 254, 259 (6th Cir. 2003). Instead, it is only necessary that a substantial basis exist on which the state court judge could determine probable cause.

It is now well-established that hearsay may properly serve as the basis on which to issue a warrant so long as a substantial basis exists to credit the hearsay. *United States v. Ventresca*, 380 U.S. 102, 107-08 (1965); *Jones v. United States*, 362 U.S. 257, 272 (1960). Probable cause, therefore, may be found in hearsay statements from reliable persons or in observations made by trained law enforcement officers. *See, McDonald v. United States*, 335 U.S. 451, 454 (1948). *See, United States v. Spears*, 965 F.2d 262, 277 (7th Cir. 1992), *cert.*

7

*denied*, 506 U.S. 989 (1992).

Probable cause also may be based upon information provided by a confidential informant. *United States v. Mille*, 314 F.3d 265 (6ᵗʰ Cir. 2002), *cert. denied*, 539 U.S. 908 (2003). In determining whether information provided by a confidential informant establishes probable cause, the court will consider the veracity, reliability and basis of knowledge of such information. *See, United States v. Smith*, 182 F.3d 473, 477-78 (6ᵗʰ Cir. 1999). No one factor is to be given controlling weight in this analysis as these elements are not separate and independent requirements. A deficiency in one element may be compensated for by a strong showing of another. *Gates*, 462 U.S. at 233. As an example, the Supreme Court offered the following:

> [I]f an unquestionably honest citizen comes forward with a report of criminal activity - which if fabricated would subject him to criminal liability - we have found that rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and *detailed description* of alleged wrongdoing, along with a statement that the event was *observed first-hand*, entitles his tip to greater weight than might otherwise be the case.

*Id*. at 233-34 (emphasis added); *United States v. Allen*, 211 F.3d 970, 976 (6ᵗʰ Cir. 1999), *cert. denied*, 531 U.S. 907 (2000)("[W]here a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate *may* believe that evidence of crime will be found.") (original emphasis)

A search warrant affidavit "is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should be added." *Allen*, 211 F.3d at 975. Further, "[a]ffidavits are not required to use magic words" nor need the obvious be spelled out.

8

*Id.* An affidavit need not present proof that would "withstand vigorous cross-examination." *Id.* It need not identify the owner/occupant of the property to be searched. *United States v. Pinson*, 321 F.3d 558, 564-65 (6th Cir. 2003) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 555-56 (1978) ("Search warrants are not directed at persons; they authorize the search of 'place[s] and the seizure of thing[s], and as a constitutional matter they need not even name the person from whom the things will be seized.")

Further, independent corroboration will not be required if the affidavit contains a tip from a disclosed informant who has proven to be reliable. *United States v. Woosley*, 361 F.3d 924, 926-27 (6th Cir. 2004) (citing *Allen*, 211 F.3d at 976). Any set of facts that confirms the accuracy of the information supplied by the informant may be relied on to substantiate the reliability of the informant. *United States v. May*, 399 F.3d 817, 824 (6th Cir. 2005). *See also, Jones v. United States*, 362 U.S. 257, 271-72 (1960) (rejecting the argument that a search warrant was defective because the informants relied on to obtain the warrant were not produced to the magistrate or named in the affidavit and the affiant officer did not make his own independent investigation). *United States v. Greene*, 250 F.3d 471, 479-80 (6th Cir. 2001) ("Sixth Circuit precedent clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable.")

It is only necessary that the issuing judge be able to conclude independently that the informant is reliable. *See, United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005). The facts that support this independent judicial determination of informant reliability need not take any particular form. *Id.* So long as the totality of the circumstances contained in the affidavit sets forth a substantial basis to believe that a fair probability existed that contraband

9

would be found in the stated location at the time of the search, the constitutionality of the search warrant will be upheld.

3.      **The Affidavit at Issue**

With the above principles in mind, the Court turns again to the arguments of Defendant Shaw as they relate to the contents of the March 8 affidavit of LMPD Officer Bower (DN 50, Ex. 1).  Shaw has challenged the adequacy of the affidavit to establish probable cause where the affidavit rests primarily on information provided by an anonymous, confidential informant that Shaw protests was not shown to be reliable or truthful in his or her prior dealings with the police, if any.  To compound these problems, the affidavit, according to Shaw, does not set forth the basis of knowledge for the information provided by the unnamed informant.  Shaw concludes that under such circumstances the affidavit fails to contain a substantial basis for the issuing court to conclude that a fair probability existed that evidence of crime would be found in Brown's apartment at the time of the search, particularly given the lack of substantial independent police corroboration of the underlying alleged criminal activities supposedly conducted from the apartment.

The Court in considering such arguments is limited in the scope of its examination to the four corners of Officer Bower's affidavit.  *See, United States v. Dyer*, 580 F.3d 386, 390-391 (6th Cir. 2009).  *See also, Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971); *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973).      Examination of the contents of the affidavit confirms that the primary source of his information concerning the alleged drug dealing from Brown's apartment was an unnamed confidential informant referred to in the affidavit as the "CI."  It was from the CI that Officer Bower learned that a black male named

10

Punkin was allegedly selling crack cocaine from Brown's apartment where he was living with his girlfriend Amber. (DN 50, Ex. 1). The affidavit further reflects that the CI advised the officer that Punkin had previously been arrested for selling cocaine, and that the CI had been present in the apartment within the past 48 hours when drugs were sold.

While the affidavit describes the CI as being "reliable," and an individual "who is knowledgeable in the ways in which drugs are packaged, [and] sold," it gives no indication of the nature of the relationship between Officer Bower and the informant. The affidavit simply describes the CI as being "reliable" without providing any basis on which the reader can determine the accuracy of this characterization. The affidavit does not provide any facts concerning the informant's prior relationship as such with the police. In other words, we are not provided with a "track record" that reveals either the number of prior criminal investigations in which the informant has provided accurate and truthful information, or the number of years in which the informant has been providing such information, or even whether the CI's information has resulted in prior arrests or convictions.

In the Sixth Circuit, the law is now well established that an affidavit must "demonstrate more than simply blind faith in the words of an affiant who claims his unnamed informant is reliable." *United States v. Ferguson*, 252 Fed. Appx. 714, 721 (6th Cir. 2007) (citing *United States v. May*, 399 F.3d 817 (6th Cir. 2005)); *see also, United States v. Likins*, 84 Fed.Appx. 504, 509 (6th Cir. 2003) ("[T]he Court first notes that the affiant's description of the information [provided by the confidential informant] as reliable is of no moment without sufficient detailed information.") (citing *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)) Accordingly, given the absence of any supporting facts to confirm the informant's

reliability, we are required to examine the remainder of the affidavit to determine whether Officer Bower's own independent investigation substantially corroborated the information concerning the likely presence of illegal narcotics at the apartment of Defendant Brown[2].

Ordinarily, independent corroboration of information provided by an informant is not a prerequisite to a finding of probable cause; however, in those instances in which an affidavit completely fails to contain any indicia of an informant's reliability, the federal courts will insist that the affidavit include substantial independent police corroboration of the informant's accusations. *United States v. Frazier*, 423 F.3d 526, 632 (6th Cir. 2005) (citing *United States v. Woosley*, 361 F.3d 924, 297 (6th Cir. 2004). Because the present affidavit contains no such indicia of reliability, the remaining contents must substantially and independently corroborate the CI's claim of drug dealing from Brown's apartment. *Allen*, 211 F3d at 976 (citing cases which "rightly insisted upon substantial independent police corroboration because of the absence of any indicia of the informant's reliability.")

In this instance, the face of the affidavit reveals that Officer Bower did engage in a number of efforts to confirm the information provided by the CI.  For example, Bower, using a photograph, determined that the aforementioned "Punkin" was Antwone Shaw, an individual with whom the detective was familiar due to Shaw's prior dealings with the police. Additionally, Bower met with the assistant manager of the apartment complex where Brown's

---

[2]Obviously, no criticism of the affidavit can be raised merely because Officer Bower relied on the out-of-court statements of an undisclosed informant.  Search warrant affidavits frequently rely upon hearsay, and the courts of this circuit have repeatedly affirmed such practice. *See, United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 194 (2009) ("It is well established that a magistrate may rely on hearsay evidence in making his probable cause determination.") (citing *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003); *Dyer*, 580 F.3d at 391; *Helton*, 314 F.3d at 819.

apartment was located.  The assistance manager verified that an individual named Amber Brown

was then leasing an apartment at the complex and that a black male named Antwone was living

with her in that apartment.  Officer Bower also confirmed that Antwone Shaw had been released

on shock probation following his previous state convictions five years earlier for trafficking in

cocaine and possession of a controlled substance.  Accordingly, Officer Bower by his own

efforts did confirm certain portions of the information provided by the CI, particularly those

facts concerning (1) the presence of Shaw in the apartment with Amber Brown and (2) Shaw's

remote criminal past involving drug dealing.

        The question remains, however, as to what if any steps Bower took to corroborate

the most serious allegations of the CI--- that illicit drugs were recently sold from the apartment

within the past 48 hours.  Without this additional level of corroboration, the most that can be said

is that the officer corroborated matters that were either innocent facts or primarily were facts of

public record.  It is true that the law does not require that every single item of information

provided by a confidential informant must be corroborated by independent police investigation.

In fact, case law of the Sixth Circuit is clear that the information provided by a CI need only be

"corroborated to some degree."  *Dyer*, 580 F.3d at 392 (citing *United States v. Jenkins*, 396 F.3d

751, 760 (6th Cir. 2005), *cert. denied*, 546 U.S. 813 (2005).

        Nevertheless, the mere corroboration of purely innocuous facts ordinarily will not

be sufficient, standing alone, to satisfy the requirement of substantial independent corroboration

of the claims of an unidentified informant whose reliability, veracity and accuracy have not been

sufficiently established in the affidavit. *See, United States v. Weaver*, 99 F.3d 1372, 1377-79 (6th

Cir. 1996) ("From this affidavit, all other information that the Government cites as particularized

facts, that is, the suspect's name, address and description of the residence, could arguably be obtained by any person passing the [defendant's] ... house."); *United States v. Bryant*, 951 F. Supp. 674, 679 (E.D. Mich. 1997) ("[T]he law is clear that 'merely verifying public information such as addresses ... and criminal records is not sufficient to corroborate an informant's statement.'") (citing *United States v. Ingram*, 985 F.2d 562 (6th Cir. 1993) (citing *United States v. Baxter*, 889 F.2d 731, 733 (6th Cir. 1989)).  Neither will the mere verification a suspect's prior criminal history, of itself, be determinative, although it is a relevant factor in the probable cause inquiry.  *United States v. Wagers*, 452 F.3d 534, 541 (6th Cir. 2006), *cert. denied*, 549 U.S. 1032 (2006)(citing *United States v. Blanton*, 520 F.2d 907, 912 (6th Cir. 1975).

        Review of the affidavit fails to reveal any substantial and independent verification by Bower of the CI's claim to have recently witnessed a drug transaction in the apartment. Unlike many other cases, we are not presented with a situation where the affidavit recounts a controlled drug purchase by an informant who is given marked currency by police to buy drugs at a given location, who then purchases such drugs, which are confirmed by police to be contraband.  *See, United States v. Degrate*, 2009 WL 1911787 at *3 (E.D. Mich. 2009) (upholding search warrant affidavit based on a CI's claim to have purchased drugs at a specific location within the past 48 hours, where the officers involved corroborated the CI's key claim by having the CI participate in a controlled purchase, which they observed).  To the contrary, the present case falls far closer to *United States v. Weaver*, 99 F.3d 1372, 1376-77 (6th Cir. 1996) and *United States v. Bryant*, 951 F. Supp. 674 (E.D. Mich. 1997).  For example, in *Weaver* the only effort to corroborate the information provided by the informant involved consisted of the mere verification of innocuous facts such as the address and external appearance of the alleged

14

location.  *Weaver*, 99 F.3d at 1378-79(affidavit which indicated only that a reliable confidential informant had seen marijuana on the premises of defendant's home three days earlier was insufficient to establish probable cause where the affidavit presented no underlying factual circumstances to support the informant's knowledge nor any independent corroboration thereof).

Similarly, in *Bryant* the police obtained a search warrant based on the information of a CI who alleged that he/she had seen the defendant in possession of a .380 caliber handgun and 9 mm handgun in his home within the past 24 hours.  *Bryant*, 951 F.Supp. at 675-76.  The affidavit otherwise provided only that the informant had provided information to the Detroit police on five prior occasions, that the defendant had a prior conviction for breaking and entering, and that police had confirmed that the defendant lived at the location where the CI claimed to have observed the firearms.

In other words, the contents of the affidavit in *Bryant* were exactly the same, if not stronger than, the present situation where Officer Bower confirmed merely that Shaw did have a 5-year old prior criminal record and that he lived in Amber Brown's apartment.  Based on the affidavit in *Bryant*, police obtained a search warrant for the defendant's home to seize any firearms therein.  Following the execution of the search warrant, ATF agents and local police seized four firearms including two that met the description provided by the CI.  The defendant subsequently moved to suppress from evidence the firearms obtained during the search, which led the district court to consider the sufficiency of the affidavit.

After discussing the *Weaver* decision and contrasting it with a separate decision announced in *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993), the court continued in *Bryant* to hold the challenged affidavit to be insufficient.  In this regard, the *Bryant* court

15

explained that the mere statement of the CI that he had seen the defendant in possession of the two handguns was lacking in relevant detail, and just as importantly, the affidavit contained no suggestion that law enforcement officers had attempted to conduct surveillance intended to corroborate the facts of the defendant's possession of the firearms.  *Id*. at 679.  Instead, the officers merely had verified what was readily observable, such as the defendant's address, or could be obtained from public criminal records. *Id*. (citing *United States v. Ingram*, 985 F.2d 562 (6th Cir. 1993) (citing *United States v. Baxter*, 889 F.2d 731, 733 (6th Cir. 1989)).

Such corroboration was held by the court in *Bryant* to be insufficient.  Further, the court continued to hold that merely because the affidavit alleged that the same informant had provided truthful information on at least five prior occasions, the court could not find under the totality of the circumstances that the information in the affidavit provided a substantial basis for a finding of probable cause.  Indeed, the court held that given the serious deficiencies in the affidavit, a reasonably well-trained officer could not have relied upon it in good faith as the police  "'should have realized that [they] needed to do more independent work to show a fair probability that this suspect was ... possessing' firearms." *Bryant*, 951 F.Supp. at 679 (citing *Weaver*, 99 F.3d at 1380).

The same deficiencies plague the affidavit of Officer Bower.  In fact, the present affidavit is indeed weaker than the one held to be deficient in *Bryant*, as it does not set forth any prior history of cooperation by the CI with the LMPD.  Just as in *Bryant*, however, the affidavit fails to contain substantial and independent corroboration of any activities of cocaine sales made from the apartment in question.  All that the reader is left with is the CI's bald accusation and Officer Bower's corroboration of matters of public record, such as Shaw's

16

remote criminal history five years earlier and Amber Brown's rental of the apartment.  Matters might be entirely different if the type of corroboration that occurred in *Degrate* decision cited above had occurred in the present case.  It did not, however, and the present case stands in stark contrast to those published opinions in the Sixth Circuit in which the incriminating information provided by a confidential informant has been substantially corroborated, such as in the *Dyer* decision.  *See, United States v. Dyer*, 580 F.3d 386, 390-391 (6th Cir. 2009)

   *Dyer* involved the prosecution of a North Carolina couple accused of the possession and distribution of methamphetamine from a rental cabin located in Pigeon Forge, Tennessee.  Local police searched the rental cabin pursuant to a search warrant that was based on information from a confidential informant (CI) who advised police in North Carolina that, within the past seven days, the CI had met at the Pigeon Forge rental cabin and had purchased methamphetamine from Defendant James Dyer, II.  The CI related that while inside the cabin, he/she had observed a large quantity of methamphetamine in the basement game room.  The CI further advised the police that the couple drove a blue Dodge Neon and a gray Ford Ranger with North Carolina registration plates.  *Id*. at 388 n. 1.

   The affidavit in *Dyer* further provided that Tennessee police had recently met with North Carolina police together with the CI, who took them to the location of the Pigeon Forge rental cabin where officers observed the two aforementioned vehicles parked outside. Later the same day, Tennessee police conducted surveillance and observed a couple, who matched the CI's description, exit the rental cabin.  Information separately provided that day by North Carolina police confirmed that James Dyer, II, had multiple outstanding felony warrants for manufacture and distribution of methamphetamine in North Carolina.  *Id*.

Based on this information, Tennessee police obtained and executed a search warrant on the day of the surveillance, December 6, 2006. As the couple fled the scene, the officers remaining at the cabin executed the search warrant which revealed two safes in the cabin that contained $4,979 and 50.9 grams of methamphetamine. Police later separately apprehended the couple, and federal drug charges were brought.

The defendants in *Dyer* unsuccessfully moved to suppress the evidence taken from the cabin based on the argument that the information contained in the affidavit was provided by an unnamed CI whose reliability was not adequately established by information concerning prior tips provided by the CI or any information concerning the length or nature of the CI's relationship with law enforcement. The district court, after determining that defendant Dyer had standing to contest the search,[3] continued in its opinion to hold that the challenged affidavit set forth a substantial basis on which to establish probable cause to believe that methamphetamine would be located in the cabin on the date of the search. Following his conviction, Dyer challenged the determination of the district court that the search warrant was supported by probable cause.

In affirming the suppression decision of the trial court, the Sixth Circuit noted that the affidavit contained information that the CI had directly witnessed a drug transaction in the basement of the rental cabin, which he described in detail to police. Further, while the identity of the informant was not made known to the issuing magistrate judge, the officers involved were aware of the informant's identity and had met directly with him. *Id*. at 39192. Finally, the Sixth

---

[3] The United States does not challenge the existence of a reasonable expectation of privacy by Defendant Shaw in the apartment rented by his co-Defendant, Amber Brown. Accordingly, the issue is waived.

Circuit held that Dyer's argument that the officers had failed to independently corroborate the information provided by the CI was unpersuasive given that (1) the CI's identity was known to the officers and (2) the CI had directly witnessed the illegal activity on the premises searched, which (3) the CI had shown the officers the cabin and the automobiles of the suspects prior to the warrant being issued.  The Sixth Circuit in this regard also noted in *Dyer* that the officers had obtained confirmation from North Carolina that outstanding criminal warrants for drug crimes had been issued against both defendants, as well.  *Id*. at 392.  Accordingly, based upon the totality of these circumstances, the Sixth Circuit upheld the decision of the lower court.

Here, we simply do not have the type of corroboration that the Sixth Circuit recently found to be sufficient in *Dyer*.  We first do not have a confidential informant with a disclosed history of police cooperation.  Also, we do not have a situation in which we can determine from the face of the affidavit whether the confidential informant had met with Officer Bower.  There is no indication that the informant pointed out to Bower either of the Defendants, Brown or Shaw, as did the CI in  *Dyer;* nor did the affidavit indicate that the CI took Officer Bower to the location of the Defendants.  Certainly, the CI did not describe the interior of Brown's apartment, which as Shaw notes, one might expect if the CI indeed had been present therein within 48 hours before.

In sum, the present case stands in stark contrast to *Dyer* and falls far closer to the situation that existed in *Bryant* and *Weaver* where the district court found the affidavits involved to be insufficient due to the absence of information establishing the reliability of the informant or any independent corroboration of the incriminating allegations made by the informant.  *See also, United States v. Wilhelm*, 80 F.3d 116, 117-20 (4th Cir. 1996) (upholding the suppression of a

19

search executed pursuant to search warrant where the affidavit provided merely that an unidentified concerned citizen had advised police that he had seen marijuana being sold in the defendant's home within the past 48 hours and police did nothing more than confirm that the defendant did reside at the location identified by the CI).

The Court must conclude after a thorough review of the affidavit of Officer Bower conducted pursuant to the *Gates* standard that the challenged affidavit fails to set forth sufficient information on which a substantial basis exists to find probable cause to believe that at the time of the search contraband would be found in the apartment of Amber Brown. The affidavit in question contains no factual basis to support the declaration of the informant's reliability. The affidavit contains no detailed facts which would independently corroborate the critical allegation of ongoing drug trafficking from the apartment. Officer Bower's efforts to independently corroborate the information provided by the CI at best confirmed only either innocuous facts or facts of public record readily obtainable by any interested individual. Indeed, the affidavit at hand appears to the Court to be so minimal and deficient in its contents that the Court is unable to find any published Sixth Circuit case that has upheld such a "bare bones" affidavit.

Ordinarily, at this point, the Court would take up consideration of whether the search might otherwise remain lawful under the good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984). The Court does not address the *Leon* good faith exception in the present case, however, for the simple reason that the United States has failed to raise this issue in its response to the Defendant's motion to suppress. In other words, the Government does not maintain in the alternative that should the Court find the search warrant affidavit to be

20

insufficient, the search nevertheless must be upheld because a reasonably well-trained officer would objectively rely in good faith on the issuance of the search warrant despite its unlawfulness.  Because the Government has chosen not to raise the *Leon* good faith argument as an alternative basis on which to uphold the search, the United States has waived its opportunity to do so.  Accordingly, the Magistrate Judge shall recommend that the motion of Defendants Shaw and Brown to suppress be granted in all respects.

## RECOMMENDATION

The Magistrate Judge, having made findings of fact and conclusions of law, recommends to the District Court that the motion of the Defendants to suppress be **GRANTED.**

**Dave Whalin, Magistrate Judge**
**United States District Court**

December 15, 2009

## NOTICE

Within **fourteen (14) days** after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived.  *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd.*, 474 U.S. 140 (1985).  28 U.S.C. § 636(b)(1)(c); Fed.R.Civ.P. 72(b).

Copies to Counsel of Record

21